NO. 07-06-0306-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

AUGUST 28, 2008

_____

ALFREDO FLORES, SAM LAJZEROWICZ, AND
DEBRA TRAPHAGAN, APPELLANTS

v.

STAR CAB COOPERATIVE ASSOCIATION, INC., AND ALL TAXI DISPATCH
SERVICES, INC., PAUL M. FOUTZ, TOM W. JOHNSON, CRUZ S. CHAVIRA,
MARY V. CALK, GREGORIO ZEPEDA, LEANNA JAMIE LOUTIDES,
RAMON CHAPA, BASHIR A. JAN, AGUSTIN BUDA, OMAR TIRADO,
ANTRANIK BALDJIAN, WANE BOUBACAR, APPELLEES

_____

FROM THE 131st DISTRICT COURT OF BEXAR COUNTY;

NO. 2003-CI-15869; HONORABLE O. RENE DIAZ, PRESIDING
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellants Alfredo Flores, Sam Lajzerowicz, and Debra Traphagan sued Star Cab

Cooperative Association, Inc., All Taxi Dispatch Services, Inc., and eleven individuals

including former officers and directors of Star Cab and All Taxi alleging tortious conduct

and seeking declaratory relief. Attorney Morris J. Kirschberg represented appellants.[1]

Appellants appeal a take-nothing judgment and appellants and Kirschberg appeal the judgment's joint and several award of attorney's fees in favor of appellees. We will affirm.

## Background

Star Cab is a non-profit cooperative association owning permits from the City of San Antonio for operation of a taxi business. Without a city permit an individual or entity may not lawfully carry passengers for hire in the city. During the times material to the issues in this case, appellants were among the 26 member cab drivers of Star Cab. By regulation, the city required dispatching of cabs by radio.

By 2001, the membership of Star Cab had become dissatisfied with its existing radio dispatch service. At an August meeting, members voted 25 to 1 to create All Taxi, a for-profit corporation dedicated to the provision of dispatch services for Star Cab and other subscribers. The new entity was owned in equal shares by the 26 members of Star Cab. It began operations in September 2001. To start All Taxi, members of Star Cab agreed to contribute a radio fee in addition to their Star Cab dues. While members generally paid Star Cab dues regularly, payment of All Taxi fees was sporadic. Nevertheless, Star Cab was flexible with its members on financial issues and only one member, who is not a party to the instant litigation, was expelled for non-payment of a monetary obligation.

---

[1] Flores, Lajzerowicz, and Traphagan are hereinafter collectively identified as appellants. In the trial court, appellants were represented by Morris J. Kirschberg and Morris J. Kirschberg, P.C. Kirschberg and Morris J. Kirschberg, P.C. filed a notice of appeal because the trial court jointly and severally taxed appellees' attorney's fees against them and appellants. The attorney appellants are hereinafter identified as "Kirschberg."

2

Appellants and other members of Star Cab grew dissatisfied with the assessment required to operate All Taxi.  Appellants contended officers of Star Cab were not paying their assessments while demanding payment of the other members.  Appellants also claimed directors of Star Cab wrongly induced its membership to create All Taxi with representations that the new corporation would decrease radio dispatch costs and make money by serving other taxi services.  Appellants hired Kirschberg to negotiate for the transfer of city taxi permits to a new entity.  The city refused the request and appellants unsuccessfully sued the city and Star Cab over the issue.[2]

In November 2003, the members of Star Cab expelled appellants by vote of the cooperative members.  The alleged grounds for separation were disparagement, sharing confidential business information, and, according to appellee Calk, appellants' lack of a "team spirit."

Appellants filed the underlying lawsuit in October 2003, variously asserting against Star Cab, its members Paul Foutz, Tom Johnson, Cruz Chavira, Mary Calk, and All Taxi breach of fiduciary duty, fraud, "misappropriation and misuse of funds," and violations of the DTPA.[3]  They also sought declaratory and injunctive relief.  Through first and second amended original petitions, appellants added as defendants existing and former officers and directors of Star Cab and All Taxi.  They also added claims of insurance fraud,

[2] *See Lajzerowicz v. City of San Antonio,* No. 04-05-00708-CV*,* 2005 WL 3115944, 2005 Tex.App. Lexis 9785 (Tex.App.–San Antonio November 23, 2005, no pet.).

[3] *See* Texas Consumer Protection-Deceptive Trade Practices Act, Tex. Bus. & Comm. Code Ann. §17.41 *et seq.* (Vernon 2002 & Supp. 2007)*.*

"extortion/duress," oppression of minority shareholders, "equitable buyout," "shareholder derivative action," request for appointment of a receiver over Star Cab, and a request for an accounting of Star Cab and All Taxi. Appellees, as defendants in the trial court, filed motions seeking attorney's fees as a sanction against appellants and Kirschberg according to Rule 13,[4] chapters 9 and 10 of the Civil Practices and Remedies Code,[5] and the DTPA.[6]

Trial of the case by jury began on November 28, 2005. At the conclusion of appellants' case in chief, the court granted appellees' motions for directed verdict on all appellants' claims tried with the exception of a fraud count against Foutz, Johnson, Calk, and Chavira. The jury received the case on December 12, 2005, and returned a unanimous verdict finding none of the individuals submitted engaged in fraud. After four post-trial hearings on appellees' motions for attorney's fees, the trial court issued an order taxing all appellees' attorney's fees jointly and severally against Kirschberg and appellants. The order was incorporated into a judgment that appellants, as plaintiffs, take nothing. Appellants and Kirschberg appealed.

---

[4] Tex. R. Civ. P. 13.

[5] Tex. Civ. Prac. & Rem. Code Ann. §§ 9.001 *et seq.* and 10.001 *et seq.* (Vernon 2002).

[6] Tex. Bus. & Comm. Code Ann. § 17.50(c) (Vernon 2002).

4

Discussion

Briefing Deficiencies

Appellees challenge the sufficiency of appellants' brief on several grounds including the absence of a statement of facts conforming to the requirement of Appellate Rule 38.1(f), insufficient citations to the record and authorities, and the absence of a cogent argument supporting each issue presented. *See* Tex. R. App. P. 38.1(f), (h).

The statement of facts in appellants' brief consists merely of the lengthy factual section of their live petition, complete with argument and qualifying terms such as "on information and belief," but without record references. This approach does not meet the requirements for an appellant's brief. Appellate Rule 38.1(f) requires an appellant's brief present a concise, non-argumentative statement of pertinent facts with record references. Tex. R. App. P. 38.1(f). The statement of facts section of appellants' brief afforded them a valuable opportunity to present a factual narrative drawn from the testimonial and documentary evidence the trial court admitted and to direct this court to the locations in the record supplying the facts.[7] Because appellants' brief provides us no assistance in understanding the facts established at trial, we refer to the record and appellees' statement of facts. *See Kelly v. Demoss Owners Assn.,* 71 S.W.3d 419, 422 n.1 (Tex.App.–Amarillo 2002, no pet.).

---

[7] The significance of appellants' omission is exacerbated by a substantial record consisting of a clerk's record exceeding 1,100 pages, a reporter's record from trial of over 1,400 pages, four volumes of trial exhibits, and a 170-page reporter's record from post-trial hearings.

Appellate Rule 38.1(h) provides an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). Appellants list eleven appellate issues in their brief, yet in the argument section they largely omit relevant case citations and analysis. Their discussion omits a statement of the applicable standard of review and their arguments are not constructed around the standard of review. While appellants' issues are fact intensive, dealing with a directed verdict and an order of sanctions, their argument contains few record references and relies heavily on unsupported conclusions.

Star Cab and All Taxi argue that because of briefing deficiencies appellants have presented nothing for our review. But in their briefs the appellees were, nevertheless, able to present a thorough response to appellants' issues. Because appellate briefs are meant to acquaint a court with the issues in a case and to present argument enabling the court to decide the case, we construe the briefing rules liberally and accept substantial compliance. *See* Tex. R. App. P. 38.9. While appellants' brief is not a model of proper form it sufficiently acquaints us with their issues and arguments so that we are able to consider the merits of the issues briefed and decide the case.

Issues

Appellants apportion eleven issues among two categories of alleged error. The first deals with the trial court's grant of a directed verdict on appellants' claims of misappropriation of funds, breach of fiduciary duty, violations of the DTPA, declaratory judgment, and insurance fraud, and its pre-trial dismissal of their shareholders' derivative

6

suit.  In the second category, appellants and Kirschberg attack the trial court's award of attorney's fees as a sanction.

The Directed Verdicts

When reviewing a directed verdict on a material question presented, we determine whether there is any evidence of probative force that raises a fact issue.  *See Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex. 1994).  We consider all the evidence in a light most favorable to the party against whom the verdict was directed, disregarding all contrary evidence and inferences and giving the losing party the benefit of all reasonable inferences created by the evidence.  *Id.*  If there is any conflicting evidence of probative value on an issue, the directed verdict is improper and the case must be reversed and remanded for jury determination of that issue.  *Id.*

In their first issue, appellants assert the trial court erred in directing a verdict against them on their claim that officers of Star Cab misappropriated cooperative money for their individual use.  For this claim, appellants cite two brief excerpts from the testimony of Johnson, the former president of Star Cab, that All Taxi was founded with the money and credit of Star Cab and the members of Star Cab did not receive All Taxi share certificates. The crux of appellants' argument, however, is their conclusion that wrongful conduct would occur if officers of Star Cab used the cooperative's money to create All Taxi but personally held ownership.  This sequence is not supported by any record references or citations to relevant authority.  The record reveals witness after witness testified that All Taxi was owned by the 26 members of Star Cab. But even had the claim possessed any evidentiary

7

basis it could not succeed. Absent an individual injury to a corporate stockholder, arising from a contract or other duty owed the stockholder by the wrongdoer, a stockholder cannot recover damages for an injury done solely to the corporation, even though the stockholder may suffer injury by the wrong. *Wingate v. Hajkik,* 795 S.W.2d 717, 719 (Tex. 1990). Finally, we note in their response to appellees' motion for directed verdict, appellants represented to the trial court they did not wish to assert misappropriation of funds apart from their claim for breach of fiduciary duty. Issue one is overruled.

In their second issue, appellants assert the trial court erred in directing a verdict against them on their breach of fiduciary duty claims. Appellants contend appellees breached fiduciary duties in two respects: (1) Johnson and other unnamed appellees were promoters of All Taxi and in that capacity owed and breached fiduciary duties to the members of Star Cab and (2) assuming the members of Star Cab were not shareholders in All Taxi then they were partners giving rise to a fiduciary relationship.[8]

Appellants do not cite us to, nor do we find, a Texas case holding that a corporate "promoter" of a proposed corporation stands in a fiduciary relationship with a prospective investor. And appellants do not allege that here an informal fiduciary duty arose from "a moral, social, domestic or purely personal relationship of trust and confidence." *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 287 (Tex. 1998). When the substantive law does not permit recovery on the established facts a directed verdict may

---

[8] Ordinarily officers and directors of a corporation do not owe individual shareholders a fiduciary duty. *Grinnell v. Munson,* 137 S.W.3d 706, 718 (Tex.App.–San Antonio 2004, no pet.). On the other hand, partners stand in a fiduciary relationship with one another. *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998).

8

be proper.  *See Arguelles v. U.T. Fam. Med. Ctr.,* 941 S.W.2d 255, 258 (Tex.App.–Corpus Christi 1996, no writ) (directed verdict held proper because Texas does not recognize "loss of chance" claim in suit alleging medical malpractice).  The trial court properly directed a verdict against appellants on their breach of fiduciary duty claim by "promoters" of All Taxi.

Appellants do not point us to any facts in the record giving rise to a partnership among the members of Star Cab.  Rather, they assume they were not shareholders of All Taxi because share certificates were not issued and then further assume in law a partnership existed.  But this is no evidence of a partnership.[9]

Moreover, even if we were to assume the existence of fiduciary relationships among the members of Star Cab, we are left with the unanswered questions of what duty appellants claim was breached[10] and what evidence established the breach.  In their brief, appellants tell us they "believe that the evidence has shown that these Defendants breached that duty [as promoters] and that the Plaintiffs were injured thereby."

---

[9] Historically proof of a partnership or joint venture required evidence of each of the following elements: (1) a community of interest in the venture; (2) an agreement to share profits; (3) an agreement to share losses; and (4) a mutual right of control or management of the enterprise.  *See Coastal Plains Dev. Corp. v. Micrea, Inc.,* 572 S.W.2d 285, 287 (Tex. 1978).

[10] The term "fiduciary" is derived from civil law and generally applies "to any person who occupies a position of peculiar confidence towards another."  *Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 512 (1942).  In general, a fiduciary is obligated to act within the scope of his office with "integrity and fidelity," and to deal fairly and in good faith.  *Id.*  A fiduciary must "deal openly, and make full disclosure to the party with whom he stands in such relationship."  *Id.* at 513-14.

As for partnership liability, the evidence is not identified but from appellants' argument we deduce it is the testimonial affirmation of Traphagan that Calk, Foutz, Johnson, and unnamed others did not pay assessments. Appellants contend this conclusion is borne out by two voluminous exhibits consisting of copies of billing statements to members of Star Cab. Although appellants do not direct us to specific statements in the exhibits, we examined the statements and find they show nothing more than appellants and appellees were variously in arrears in payment of assessments. This fact was shown by the trial testimony.

Regardless of the fiduciary duty alleged, evidence of the substance and quantum relied on by appellants amounts to no evidence of a breach of fiduciary duty. Issue two is overruled.

In their third issue, appellants assert the trial court erred in directing a verdict against them on their DTPA claims against Johnson, Foutz, Chavira, Calk, and All Taxi. Without citing the DTPA subsection or subsections on which they rely, appellants claim appellees misrepresented that the cost of All Taxi dispatch services would be identical to the amount charged by its predecessor and the cost of All Taxi's service would be reduced because the company expected five initial subscribers of its service. According to appellants, only two companies initially subscribed. Appellants also claim appellees engaged in

unconscionable conduct[11] because officers of All Taxi did not pay all the fees required of Star Cab members.[12]

Appellees challenge appellants' claimed status as DTPA consumers. Standing to sue under the DTPA requires the plaintiff qualify as a "consumer." *Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705, 706 (Tex. 1983). A DTPA consumer is one who: (1) seeks or acquires goods or services by purchase or lease; and (2) the goods or services sought or acquired form the basis of his or her complaint. *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351-52 (Tex. 1987); *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.,* 724 S.W.2d 13, 15 (Tex. 1987). Ordinarily, consumer status is a question of law for the court. *Lukasik v. San Antonio Blue Haven Pools, Inc.,* 21 S.W.3d 394, 401 (Tex.App.–San Antonio 2000, no pet.).

Appellants claim they were consumers because they "were attempting to purchase stock in All Taxi." But the corporate stock appellants sought in All Taxi is not a "good" for attaining DTPA consumer status. *See Hendricks v. Grant Thornton Int'l,* 973 S.W.2d 348, 356-57 (Tex.App.–Beaumont 1998, pet. denied).

---

[11] "'Unconscionable action or course of action' means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Comm. Code Ann. § 17.45(5) (Vernon 2002).

[12] In addition to claims of laundry list violation and unconscionable conduct, appellants also alleged in their live petition that "defendants" breached an implied warranty. Appellants do not challenge on appeal the trial court's directed verdict on this theory.

Even assuming *arguendo* appellants were consumers of All Taxi, they do not direct us to any record evidence of their detrimental reliance on a representation[13] by an appellee, unconscionable conduct[14] perpetrated by an appellee, or that a DTPA violation was a producing cause of any injury.[15]

The trial court did not err in directing a verdict against appellants on their DTPA claims. Issue three is overruled.

In their fourth issue, appellants complain the trial court erred in directing a verdict against them on their requests for a declaratory judgment[16] that Star Cab did not provide sufficient notice of intent to expel appellants from the cooperative under the terms of its by-laws, and at the time appellants were expelled most of the Star Cab members were on suspended status for non-payment of association financial obligations.

In short, appellants' complaint concerns the trial court's refusal to make declarations of facts supporting their claim of wrongful expulsion from Star Cab. Proof of such facts

---

[13] An action under the laundry-list requires *inter alia* detrimental reliance by the consumer. Tex. Bus. & Comm. Code Ann. § 17.50(a)(1)(B) (Vernon 2002).

[14] Here appellants repackaged as unconscionable conduct the same facts they claim amount to breach of fiduciary duty and support it with the same record references. According to appellants, appellees did not pay the weekly fee for start-up of All Taxi and this raises a fact issue of unconscionable conduct. We disagree and find appellants' claim of unconscionable conduct without merit.

[15] To prevail on a DTPA claim, a consumer must present sufficient evidence that a violation of the act was a producing cause of the injury alleged. *See* Tex. Bus. & Comm. Code Ann. § 17.50(a) (Vernon 2002).

[16] *See* the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001–37.011 (Vernon 2008) (UDJA).

would potentially be germane to appellants' theories of breach of fiduciary duty and duress. Moreover, by seeking a declaratory judgment of various elements of their tort claims, appellants pave the way for an award of attorney's fees on theories not otherwise authorizing such a recovery. But this type of end run is contrary to the purposes of the UDJA and impermissible. *See City of Laredo v. South Texas Nat'l Bank,* 775 S.W.2d 729, 732 (Tex.App.–San Antonio 1989, writ denied) (party to existing suit may not seek a declaratory judgment to recover attorney's fees not otherwise authorized by law); *cf. BHP Petroleum Co. v. Millard,* 800 S.W.2d 838, 841 (Tex. 1990) (the UDJA is "'not available to settle disputes already pending before a court.'") (*quoting Heritage Life v. Heritage Group Holding,* 751 S.W.2d 229, 235 (Tex.App.–Dallas 1988, writ denied)). The trial court did not err in directing a verdict against appellants on their claim for declaratory relief. Issue four is overruled.

In the fifth issue, Traphagan asserts the trial court erred in directing a verdict against her on a claim of "insurance fraud."[17] According to Traphagan, Johnson was not only a cab driver but an insurance agent and in the latter capacity defrauded her by not placing comprehensive coverage on her cab even though he accepted her premiums and supplied a proof of insurance card. Traphagan tendered two checks to Johnson, payable to Star Cab, totaling $825.71 which she believed paid the premium for one year's comprehensive insurance coverage on her cab. According to Traphagan, during the first year to year-and-a-half of Star Cab's existence, members of the association were named insureds on a

---

[17] During trial, counsel for appellants notified the court that the claim was correctly classified as common law fraud.

motor vehicle liability policy. Traphagan agreed her vehicle had liability insurance coverage the entire time she was a member of Star Cab. Johnson testified he was not a licensed insurance agent but as president of Star Cab sought fleet insurance for the cooperative. According to Johnson, the money Traphagan testified she tendered for insurance was a down payment for her share of the fleet insurance premium. The insurance card he provided Traphagan was issued by Star Cab's liability insurance carrier for drivers to carry as proof of coverage.

The elements of a cause of action for fraud are: "'(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.'" *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 211 n.45 (Tex. 2002) (*quoting In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex. 2001)); *See* State Bar of Texas, *Texas Pattern Jury Charges–Business, Consumer, Insurance, and Employment,* PJC 105.2 & cmt. (2006). There is no evidence that Johnson defrauded Traphagan in the purchase of a comprehensive motor vehicle policy. Issue five is overruled.

In their ninth issue, appellants argue the trial court erred by dismissing their shareholders' derivative suit on behalf of Star Cab for failure to state a cause of action. Appellants plead a derivative action against officers and directors of Star Cab alleging claims of beach of fiduciary duty, fraud, DTPA violations, and extortion. As authority for

standing to bring a derivative claim, appellants rely on article 5.14 of the Business Corporation Act. Tex. Bus. Corp. Act Ann. art. 5.14 (Vernon 2003). Article 5.14 provides for a shareholders' derivative action on behalf of a for-profit corporation. But it is not applicable to Star Cab. *See* Tex. Bus. Corp. Act Ann. art. 9.14(A) (Vernon 2003) (stipulating corporations to which Business Corporation Act applies). Star Cab is an association created under the Texas Cooperative Association Act, Tex. Rev. Civ. Stats. Ann. art. 1396-50.01 (Vernon 2003) (TCAA). An association incorporated under the TCAA is subject to the provisions of the Texas Non-Profit Corporation Act to the extent they do not conflict with the TCAA. Tex. Rev. Civ. Stats. Ann. art. 1396-50.01 § 3 (Vernon 2003). Because it is thus governed by the Texas Non-Profit Corporation Act, the Business Corporation Act does not apply to Star Cab.

The Texas Non-Profit Corporation Act does not contain a provision like Business Corporation Act article 5.14, authorizing a derivative action. Appellants recognize this void but argue a members' derivative action nevertheless was available to them. In support, they cite *Mitchell v. LaFlame,* 60 S.W.3d 123 (Tex.App.–Houston [14th Dist.] 2000, no pet.) and *Governing Board of the DAR v. Pannill,* 561 S.W.2d 517 (Tex.Civ.App.–Texarkana 1977, writ ref'd n.r.e.). We do not find these cases dispositive of the question.

At issue in *Mitchell*, 60 S.W.3d at 127, was whether owners of townhomes could individually sue a non-profit homeowners' association for damages to corporately owned common areas. Affirming a judgment notwithstanding the verdict that limited the owners' recovery to damage to their individually owned property, the court found the owners should have brought a representative suit on behalf of the corporation for damage to corporate

15

property.  *Id.* at 129.  As the question was not before it, the court did not decide whether members of a Texas non-profit corporation may bring a derivative action on behalf of the corporation.

Among the issues in *Pannill,* 561 S.W.2d 517, was the availability of an *ultra vires* claim by members of a non-profit corporation suing in a representative capacity to enjoin the transfer of real property by a corporate officer.  *Id*.  The court was not presented with the question, nor did it decide, whether members of a non-profit corporation may sue derivatively for the benefit of the corporation.

Appellants further argue we should fashion a remedy.  Under these facts, and in the absence of statutory authorization for derivative actions under the Non-Profit Corporation Act, we decline their invitation.  *See* Historical and Statutory Notes, Tex. Rev. Civ. Stat. Ann. art. 1396-1.10 (Vernon 2003) (*quoting* Non-Profit Corporation Act as, inter alia, "[a]n Act to adopt and establish general statutory provisions applicable to non-profit corporations . . . .").  Issue nine is overruled.

Award of Attorney's Fees as a Sanction[18]

We apply an abuse of discretion standard in reviewing an order of sanctions.  *Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex. 2004).  We will reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that

---

[18] The court made a finding supporting an award of attorney's fees as a sanction under Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code Ann. § 10.001-10.006 (Vernon 2002); and Tex. Bus. & Comm. Code Ann. § 17.50(c) (Vernon Supp. 2007).

16

its ruling was arbitrary or unreasonable. *Low v. Henry,* 221 S.W.3d 609, 614 (Tex. 2007). Sanctions function to compensate, punish, or deter. *See TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 922 (Tex. 1991) (Gonzalez, J., concurring). However, all sanctions granted must be "just." *Butan Valle, N.V. v. Smith,* 921 S.W.2d 822, 827 (Tex.App.–Houston [14th Dist.] 1996, no writ). Justness requires a direct relationship between the offensive conduct and the sanction imposed and the sanction must not be excessive. *TransAmerican,* 811 S.W.2d at 917.

In their sixth issue, appellants and Kirschberg argue that appellees should have segregated attorney's fees attributable to the defense of frivolous claims alleged in the pleadings from attorney's fees attributable to the defense of meritorious claims. A complaint on appeal that a party seeking attorney's fees failed to segregate fees among specific claims requires a timely and specific objection in the trial court; otherwise, the complaint is waived*. Green Int'l v. Solis,* 951 S.W.2d 384, 389 (Tex. 1997); *see* Tex. R. App. P. 33.1(a)(1)(2). Appellants do not provide a record citation to, nor do we find, a timely objection in the trial court calling its attention to the argument appellants now urge in this court. In the absence of an objection and ruling, nothing is preserved for our review. Issue six is overruled.

In their seventh issue, appellants and Kirschberg argue that attorney's fees awarded appellees as a sanction should have been segregated to exclude expenses for defense incurred while the live petition was signed by their former attorney. Appellants filed a motion in the trial court to apportion attorney's fees with their former attorney. We have located this motion in the clerk's record and find it sufficient to call appellants' complaint

17

to the attention of the trial court. Tex. R. App. P. 33.1(a)(1)(A),(B). The record does not indicate the court expressly ruled on the motion although we find its detailed order granting the full amount of attorney's fees requested by appellees sufficiently indicates it overruled the motion for apportionment of attorney's fees by implication. Tex. R. App. P. 33.1(a)(2)(A).

Under Rule 13, when the trial court finds a pleading is groundless and brought in bad faith or groundless and brought for the purpose of harassment, it shall impose an appropriate sanction available under Rule 215(2) (b). *See* Tex. R. Civ. P. 13 & 215(2)(b). The trial court possesses authority under Rule 215(2)(b) to "make such orders . . . as are just." *See* Tex. R. Civ. P. 215(2)(b). One sanction expressly available to a trial court under the rule is an award of "reasonable expenses, including attorney fees." Tex. R. Civ. P. 215(2)(b)(8). The rule does not expressly cap or limit the amount of attorney's fees awarded to the exact amount of fees incurred by the movant for sanctions. *Falk & Mayfield, L.L.P. v. Motzan,* 974 S.W.2d 821, 823 (Tex.App.–Houston [14th Dist.] 1998, pet. denied). Moreover, the sanctions listed in Rule 215(2)(b) are inclusive, not exclusive. Tex. R. Civ. P. 215(2)(b); *Falk,* 974 S.W.2d at 823. Thus, in *Falk* the court of appeals found a sanction of three times the actual amount of attorney's fees within the trial court's discretion when the appellants' allegation of defamation was absolutely protected speech, appellants refused appellees' offer to dismiss in lieu of sanctions, and evidence showed the attorney appellants previously filed other frivolous suits. *Falk,* 974 S.W.2d at 823-25.

Here following evidentiary hearings the trial court made an order on appellees' motions for sanctions that included the following findings:

18

The court finds that good cause exists to impose sanctions pursuant to Tex. R. Civ. P. 13.

The court finds that the First and Second Amended Original Petition (sic) were presented for an improper purpose.

[Appellants' attorneys] did not make a reasonable inquiry into the legal and factual basis of the case prior to signing the First and Second Amended Original Petitions.

The court finds that the pleading was presented to increase the cost of litigation and to harass the Defendants.

The court finds that not all of the allegations or other factual contentions in the First and Second Amended Original Petition had evidentiary support at the time of the signing.

After reviewing the facts available to Plaintiff and their counsel and the circumstances existing when the pleading was filed, the Court finds that the signing of the First and Second Amended Original Petitions violate Tex. R. Civ. P. 13.

The clerk's record reveals that virtually all the activity in the case occurred following the appearance of Kirschberg. For example, the clerk's record exceeds 1,100 pages and only 54 pages of that record temporally precede the pleading through which Kirschberg made their initial appearance in the case. Exclusive of voir dire, the case required nine days to try with some of appellants' theories resolved by directed verdict while the remainder were decided adversely for appellants by the jury. Under the facts at bar, we cannot say that the trial court's award of attorney's fees as a sanction against appellants for violating Rule 13 was an abuse of discretion even if the amount awarded included an

19

amount equal to attorney's fees incurred by appellees between the filing of appellants' original petition and their first amended original petition. Issue seven is overruled.

In their eighth issue, appellants and Kirschberg argue the trial court erred in ordering appellants pay appellees' attorney's fees absent a finding that appellants, as clients of Kirschberg, were culpable of wrongful conduct. Again appellants cite no record references or controlling legal authority for their contention.

In their argument, appellants and Kirschberg regard the portion of the judgment requiring appellants pay appellees' attorney's fees as a sanction. They do not consider that appellants sought relief under the UDJA and under the act the court awarded appellees' attorney's fees. Attorney's fees are available under section 37.009 of the UDJA not as a sanction but as an award within the court's discretion. *See Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex. 1985) (grant of attorney's fees under section 37.009 within the trial court's discretion). Thus, to obtain attorney's fees under section 37.009 a showing of the culpability of an adverse party is unnecessary. Rather, the section authorizes the court to award costs and reasonable and necessary attorney's fees as are equitable and just. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 2008). Moreover, the court may award either party attorney's fees regardless of which party sought affirmative relief. *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.,* 198 S.W.3d 300, 318-19 (Tex.App.–Texarkana 2006, pet. denied); *GeoChem Tech. Corp. v. Verseckes,* 929 S.W.2d 85, 91-92 (Tex.App.–Eastland 1996), *rev'd on other grounds,* 962 S.W.2d 541 (Tex. 1998) (when plaintiff's lawsuit included a claim for declaratory relief, trial court did not

abuse its discretion in awarding attorney's fees under section 37.009 to defendants after rendering judgment in their favor).

Here the court expressly found appellees should "recover reasonable attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code § 37.009." The court also found that the fees sought by appellees were "reasonable and necessary." The trial court did not err in awarding appellees attorney's fees according to section 37.009. Issue eight is overruled.

In their tenth issue, appellants and Kirschberg claim the trial court erred in finding their allegation that funds were improperly transferred was likely without evidentiary support at the time their first and second amended original petitions were signed. Appellants do not support their argument with citations to the record or authorities nor do they demonstrate how the claimed error was harmful. Tex. R. App. P. 44.1(a)(1). They do, however, refer us to their prior argument that because start-up funds for All Taxi came from Star Cab and members of Star Cab did not receive share certificates in All Taxi it is possible All Taxi was owned by the appellee officers of Star Cab. And, according to appellants, it would be a misappropriation of funds if the directors of Star Cab wholly owned All Taxi. These statements, representing the sum and substance of appellants' claim at the time of trial, amount to no more than surmise and speculation of the alleged tortious conduct. Appellants' misappropriation claim lacked evidentiary support at the time of trial and nothing in the record shows us it possessed any greater merit at the time the pleading so alleging was signed. The trial court did not abuse its discretion in finding a want of evidence when the pleading was signed. Issue ten is overruled.

21

In their eleventh issue, appellants and Kirschberg argue the trial court erred in finding appellants' first and second amended petitions were groundless as defined by Tex. R. Civ. P. 13. "Groundless" under Rule 13 means "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." Tex. R. Civ. P. 13. To determine if a pleading is groundless, the trial court employs an objective analysis; that is, whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim. *In re United Servs. Auto Ass'n,* 76 S.W.3d 112, 115 (Tex.App.–San Antonio 2002, orig. proceeding). In so doing, the court looks to the facts available to the litigant and the circumstances at the time the suit was filed. *Id.*

Appellants and Kirschberg again do not cite the portions of the record they believe support the claimed error nor do they provide an analysis showing how the alleged error probably resulted in an improper order of sanctions. Importantly, appellants and Kirschberg do not assail findings of the trial court which included: appellants' pleadings were presented for an improper purpose, a reasonable opportunity to investigate existed before the pleadings were filed, appellants' counsel did not reasonably inquire of the relevant facts and law before signing the pleadings, the pleadings were filed to increase costs and for harassment, not all counts in the pleadings likely had evidentiary support when signed, counts in the pleadings pertaining to causes of action for misappropriation of funds, insurance fraud, the DTPA, extortion, and usurpation of corporate opportunity did not likely have evidentiary support when filed, and based on the trial court's review of the facts known to appellants and their counsel at the time the pleadings were filed counsel signed the pleadings in violation of Rule 13. These findings sufficiently support the trial

22

court's discretionary determination that good cause existed for imposition of sanctions under Rule 13.  Issue eleven is overruled.

## Conclusion

Having overruled all issues presented by appellants and Kirschberg, we affirm the judgment of the trial court.


James T. Campbell
Justice